STATE OF MAINE

KENNEBEC, SS.

DISTRICT COURT
DISTRICT SEVEN
DIV. OF SO. KENNEBEC
DOCKET NO. AUG-CV-02-051

*TSD - KEN - 4/05*

RICHARD CALCAGNI,

Plaintiff

v.

**JUDGMENT**

RICHARD RYAN and
MARY RYAN,

Defendants

This matter came from the Augusta District Court for trial in the Superior Court on a trailing regional trial list. The cause was tried to the court without a jury, and the court has fully considered all testimonial and other evidence, plus the arguments of the parties. The plaintiff is seeking damages for breach of contract, violation of the Maine Home Construction Contract Law ("HCCL") and violation of the Unfair Trade Practices Act ("UTPA"). The court finds that the performance of the defendants under the contracts was so substandard as to constitute a material breach of the contract for which damages will be awarded. The court also finds that both of the named defendants were parties to the contract and both are liable for damages resulting from the breach. However, the court does not find a violation of either the HCCL or UTPA.

### Background

In mid-2000, plaintiff Richard Calcagni contacted defendant Richard Ryan about building a personal residence for Calcagni in his Vista Heights subdivision in Winthrop. Calcagni had previously contracted for and had built on speculation and sold three houses in the subdivision. Calcagni was not a neophyte in the residential construction business.

The construction proposal was in two stages. The first stage would be the construction of a poured foundation and deck both for the house and adjoining garage, and the construction of the garage itself. According to Calcagni, he preferred to build the garage first on his projects so that it could provide storage space for tools and materials for the construction of the adjoining house. The first stage of the project was covered by the "Quote" dated August 17, 2000. The quoted price of $11,700 for the house and garage foundation and the garage structure included removal of ledge from the garage floor "and a reasonable amount of ledge from the house foundation." As it turned out, no ledge was removed from the house foundation, and this constitutes the first breach.

When it came time for the second stage of the project – the construction of the home itself on the stage one foundation – the parties were much more formal in documenting their agreement. The contract included both "proposal" and "quote" sheets, as well as a much more detailed "contract for construction." This latter document was based on a sample contract provided by Calcagni, which had been used for another of his construction projects. These consolidated documents form the contract for construction of the house for the price of $23,750, and was signed by Calcagni and both Richard and Mary Ryan for RPC Construction on December 13, 2000. Mary is Richard's mother, who provided financing for his business and also assisted from time to time at the construction site. Both Richard and Mary are parties to the contract and liable for its breach, though there is no indication that Mary herself caused the breach.

Construction continued on the house. However, the quality of construction became such a concern to Calcagni that in late March 2001 he ordered Ryan off the job. Ryan's father attempted to finish the work on basically a volunteer basis, but eventually

he stopped work also. Of the original contract, the work left to be completed included construction of a deck and the drilling of the well.

The project contract included a warranty that "the work will be free from faulty workmanship and materials for a period of one year." The defendants violated the contract not only by failing to perform certain promised work such as ledge removal mentioned above or construction of the deck and drilling of the well, but also by breach of this warranty. The specific areas of breach include the leaking foundation, construction that was not plumb and square, improperly installed garage door, and substandard workmanship in interior framing. All of these breaches in terms of workmanship were apparent to an untrained eye and do not require expert testimony to substantiate. Calcagni produced evidence through his own testimony that the total amount to repair or complete the project as the result of the defendants' breach was $9,615.89. The court finds this to be a reasonable measure of damages and adopts it for that purpose. There was also some mention in final arguments of an overpayment by Calcagni to the defendants on the contract, but the court did not find sufficient substantiation for this claim in the evidence and does not include it as part of the damages.

Plaintiff Calcagni has also claimed that the defendants have breached the HCCL by failing to include some statutory requirements in the contract. The "Quote" which the parties used to document the first phase of the project clearly did not satisfy the statutory conditions. However, when combined with the more formal and complete contract for the much larger second phase of the project, the court finds that the statutory requirements were substantially fulfilled for the project as a whole. The HCCL places the responsibility for the contract on the contractor. However, in this case where the homeowner actually provided the sample for that contract, he is hard

pressed to later complain that it is not complete under the statute. This is especially true when the homeowner is a developer himself. In summary, to the extent that there was any violation of the HCCL, those violations were de minimis and caused no damage themselves to the plaintiff. The court finds no violation.

Finally, the plaintiff alleges a violation of the UTPA. If the court had found a violation of the HCCL, that violation would have been *prima facie* evidence of a violation of the UTPA, by statute. 10 M.R.S.A. § 1490. However, since the court does not find a HCCL violation, the court must look at the UTPA issue without the *prima facie* evidence. The UTPA is concerned with unfair methods of competition and unfair or deceptive acts or practices in business. It is possible for shoddy workmanship in a construction project to constitute a violation of the UTPA, but usually only if it is shown to be part of a pattern of overall performance by a contractor over a number of projects to warrant such finding. *State v. Weinschenk*, 2005 ME 28. Here the only evidence is that the defendants did a poor job in building a house and attached garage. The court concludes that although the poor workmanship was a breach of contract, it does not rise to the level of a violation of the UTPA.

For the reasons stated above, the entry will be:

> Judgment for the plaintiff against defendants Richard Ryan and Mary Ryan in the amount of $9,615.89 plus costs and statutory interest.

Dated: June___30___, 2005

S. Kirk Studstrup
Justice, Superior Court