STATE OF MAINE
CUMBERLAND, ss.

NINTH DISTRICT COURT
Div. of Southern Cumberland
Civil Docket No. PORDC-CV-17-245

TOWN OF GORHAM,                    )
                                   )
        Plaintiff                  )          ORDER
                                   )  ON MOTION TO ENFORCE CONSENT
v.                                 )          ORDER
                                   )
SUSAN    DUCHAINE    and  )
DESIGN DWELLINGS, INC.,            )
                                   )
        Defendants                 )


Following a testimonial hearing on October 21, 2021[1], Plaintiff's Motion to Enforce Consent Order ("Motion") is GRANTED, and it is hereby ORDERED as follows:[2]


A.    Procedural History.

The background and procedural history of this case are not disputed. This case involves certain land use violations existing at 166 Narragansett Street in Gorham ("Property"), that is the business office of Defendant Design Dwellings, Inc.

---

[1]    Efforts to resolve this matter before hearing did not bear fruit.

[2]    The Court adopted many of the findings proposed by the parties. The court also added significant findings and conclusions. This Court is well aware of the Law Court's concern as expressed in the case of In Re Marpheen C. et al, 2002 ME 170,¶7, 812 A.2d 972, 974: "The mother also complains that the District Court adopted several pages of findings purposed by the State without significant change. We have said that a verbatim adoption of findings proposed by one party in a case is disfavored, as such an approach suggests that the court has not applied its independent judgment in making its findings and conclusions. [citation omitted] At the same time, however, we recognize that fact-finding can be aided by parties submitting and trial courts considering and utilizing, where appropriate, draft findings of fact offered by either side. The key question is whether the court findings reflect the application of judgment by the court, and not simply one of the parties." This Court applied its own judgment in this case. See also, Bonville v. Bonville, 2006 ME 3, ¶¶10-11, 890 A.2d 263, 266. (trial court warranted in using proposed findings, and rejection of a proposed finding reflected use of independent judgment).

REC'D CUMB CLERKS OFC
NOV 10 '21 PM2:42

("DDI").[3] The Property contains, inter alia, a storage garage depicted on a site plan approved by the Gorham Planning Board on October 5, 2015 ("Site Plan Approval"). (Pl.'s Exs. 1, 2.) On February 28, 2018, this Court entered a final Judgment based on an approved Consent Order that was signed by counsel for all parties. The Consent Order included a number of terms and conditions as well as a "Compliance Plan" containing a list of items to be completed by Defendants, with deadlines for completion of each, and penalties.

After all deadlines for completion of the items expired, numerous items remained incomplete. On October 18, 2018, Plaintiff filed the within pending Motion, supported by two affidavits signed by the Town's Code Enforcement Officer ("CEO"), Freeman Abbott, and the former Town Engineer, Megan McDevitt. Defendants filed an opposition to the Motion and Plaintiff filed a reply. On November 15, 2018, the Court granted the Motion without holding a hearing, and Defendants appealed to the Law Court.

On appeal, the Law Court vacated this Court's November 2018 Order. See Town of Gorham v. Duchaine, 2020 ME 7, ¶ 7, 224 A.3d 241 (holding that, in order to determine that Defendants were not in compliance with the Consent Order, the District Court "must rely on evidence presented at a hearing or, as anticipated by Maine Rule of Civil Procedure 43(e), through affidavits.").

On remand, this Motion was assigned to this Judge, who held an evidentiary hearing on the Motion on October 21, 2021, at which all parties appeared and were represented by counsel. The Court admitted documentary evidence, as well as testimony from three witnesses: Mr. Abbott, Ms. McDevitt, and Defendant Susan Duchaine, who is the owner of DDI.

B.    Legal Standard on Remand.

"When a consent decree has allegedly been violated, the trial court has broad discretion to fashion an appropriate remedy, but only in accordance with the terms of the decree." Duchaine, 2020 ME 7, ¶ 8, 224 A.3d 241 (citations omitted); see also State v. Shattuck, 2000 ME 38, ¶ 17, 747 A.2d 174 ("[T]he court does not

---

[3]    Defendant Susan Duchaine testified at trial that, at some point after the commencement of this action, she conveyed the Property to her son's business, CCLD, LLC, but she has not moved for a substitution of the party. See M.R. Civ. P. 25(c) ("In the case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."). However, DDI has occupied the Property continuously during the entire timeframe relevant to this litigation.

2

ordinarily treat a judgment entered upon agreement of the parties differently than a judgment entered after hearing or other adversarial process."). In this case, the Consent Order is very detailed as to the remedies for noncompliance. However, because the calculation of penalties in this case necessitates a finding of noncompliance, Plaintiff must present evidence that Defendants failed to comply with the Consent Order. See Duchaine, 2020 ME 7, ¶ 8, 224 A.3d 241.

C.  Violations of Consent Order.

1.  Compliance Plan

Plaintiff proved Defendants' failed to comply with various provisions of the Consent Order.

The February 28, 2018 Consent Order required Defendants to complete all items in the Compliance Plan by the deadlines specified in the table below. (Also see Pl.'s Ex. 5.) As of September 5, 2018, five provisions in the Compliance Plan that were incomplete:

|  | Item | Deadline |
|---|---|---|
| 2. | Install sliding door enclosures for the storage area on the southeast side of the storage garage. | 90 days from date of signed Consent Order |
| 5. | Plant landscaping trees (46) and shrubs (27). | By September 1, 2018 |
| 6. | Install concrete dumpster pad and fenced enclosure. | 120 days from date of signed Consent Order |
| 7. | Install concrete island, four (4) bollards, and a wooden roof structure for fuel storage tanks. | 120 days from date of signed Consent Order |
| 9. | Install 6' high decorative vinyl fence to the northeast of the office building. | 120 days from date of signed Consent Order |

A year later, Ms. McDevitt's Field Report dated October 25, 2019 (Pl.'s Ex. 11), reported that provisions #6 and #9 from the list above were completed, but the other provisions #2, #5, and #7 remained incomplete.

3

At the hearing, Ms. Duchaine admitted that she has not completed those remaining items.[4] Item #2 was due on May 29, 2018 (1,241 days from the hearing date), and Item #5 was due on September 1, 2018 (1,146 days). Therefore, the Court finds that Defendants have been in violation of Paragraph 4 of the Consent Order continuously for 1,241 days, as of the date of the hearing.

### 2. Certificate of Occupancy

Paragraph 3 of the Consent Order prohibited Defendants from using the storage garage on the Property until they obtained a temporary or permanent certificate of occupancy from the CEO.[5] (Pl.'s Ex. 5.) The Court finds that the CEO never issued a temporary or permanent certificate of occupancy for the storage garage. The Court further finds that Defendants are currently using the storage garage, and that the building has been in use since at least December 1, 2016, when the CEO visited the Property for an inspection. (See Pl.'s Ex. 3.) Therefore, the Court finds that the storage garage has been in use continually at least since the date of the Consent Order (1,331 days from the hearing date).

### 3. Outside Storage

Paragraph 2 of the Consent Order prohibited the outside storage of "large commercial vehicles (such as, but not limited to, dump trucks and box trucks), equipment, material, or supplies at the Property."[6] Defendants have been in violation of Paragraph 2 continuously at least since September 5, 2018 (1,142 days from the hearing date), storage of construction vehicles, equipment, and materials on the Property during various time periods, including storage of materials in the unenclosed "overhang" portion of the garage.

### D. Defendants' Arguments.

At the hearing, Defendants made various arguments to excuse their noncompliance with the Consent Order, none of which the Court finds persuasive.

---

[4] Based on the representations made by Ms. Duchaine at the hearing that fuel would not be stored on the Property, the Town agreed that it would not further pursue Item #7, so long as Defendants are prohibited from storing fuel at the Property without compliance with this item.

[5] Section 1-3(F) of the Town's Land Use and Development Code prohibits the use or occupancy of any building until a certificate of occupancy has been issued by the CEO, and the failure to obtain such a certificate is a violation of the Code. (Pl.'s Ex. 12 at 11.)

[6] This requirement echoes Condition of Approval #5 in the Site Plan Approval. (Pl.'s Ex. 1 at 9.)

4

E.    Relief Granted.

Defendants present themselves as hard working owners of a construction company with decades of experience including but not limited to board presentations, site plans, coordination with town officials, code enforcement officers, site review, financing, etc. Defendants obtained the necessary approvals from the Town to renovate their Property and to operate their business thereon, with conditions. After receiving the benefits of Town approval, Defendants began a campaign to eliminate or modify some of the conditions, but their efforts proved unsuccessful. Nonetheless, to this day, Defendants continue to fail to abide by the approved site plan conditions, and/or all of the provisions of the Consent Order. At trial, Defendant Duchaine blamed other for their troubles and misunderstandings, including former lawyers, Town enforcement officers, her knowledge of the Consent Order, representatives of Town Boards and officials, all without credible evidence. The Court concludes Ms. Duchaine was not a credible witness on these issues.

In the end, we are left with unrepentant Defendants who believe they can selectively decide what conditions associated with their site approval and Consent Decree apply; and will continue to resist compliance until the Town agrees to their demands. Sadly, this firmly held but misguided view of this situation remains unaltered to this day and is unlikely to change without significant Court intervention.

The Court concludes that Plaintiff met its burden to demonstrate that Defendants are in violation of several aspects of the Consent Order. Accordingly, the Court grants the following relief:

1.    Within sixty (60) days of the date of this Order, Defendants shall complete the remaining Item #2 and Item #5 and apply for a certificate of occupancy from the Town's Code Enforcement Officer or his designee.

2.    Defendants shall cease any outside storage on the Property immediately, including storage of materials in the unenclosed "overhang" portion of the storage garage.

3.    In accordance with Paragraph 6 of the Consent Order, Defendants shall pay to the Town the suspended civil penalty of $10,000.

4. In accordance with Paragraph 9 of the Consent Order, Defendants shall pay to the Town an additional civil penalty of $133,100.[7]

5. In accordance with Paragraph 9 of the Consent Order, Defendant shall pay the Town an additional amount representing the reasonable attorney's fees and costs incurred by the Town in bringing its Motion to Enforce Consent Order. Based on the submission of the Town, and without opposition filed, the Court awards the Town $20,000.00 in attorney's fees and costs to date. Defendants shall remit this sum within thirty (30) days of the date of the Court's order on the Town's application.

6. The civil penalty and attorney's fees payments imposed by Paragraphs 3-5, above, shall be paid by check made out to the "Town of Gorham," and shall be mailed or hand delivered to Town of Gorham, c/o Town Treasurer, 75 South Street, Suite 1, Gorham, ME 04038-1382.

7. Upon any failure of Defendants, or their principals, heirs or assigns, to perform the work required by Paragraph 1 of this Order by the date specified, or failure to cease outside storage under Paragraph 2, Defendants may still be held in violation of the Order and may be liable to the Town of Gorham for (a) an additional civil penalty in the amount $100 per day for each day the violation continues; and (b) such further relief as a court may deem appropriate, including, without limitation, injunctive relief and payment of attorney's fees and costs incurred by the Town to bring a motion to enforce this Order.

8. Upon any failure of Defendants, or their principals, heirs or assigns, to pay the sums specified in Paragraphs 3-5 of this Order, the Town may obtain a writ of execution for the remaining amounts outstanding under the terms of this Order upon the submission of an affidavit from the Town's Treasurer setting forth such remaining amounts outstanding. The Clerk is hereby authorized and directed to issue a writ of execution upon receipt of such affidavit.

---

[7] Paragraph 9 imposes a $100-per-day penalty "in the event that Defendants fail or refuse to comply with any of the terms of this Consent Order...." (Pl.'s Ex. 5 at 4.) The four violations identified above have varying lengths (sliding doors = 1,241 days, landscaping = 1,146 days, certificate of occupancy = 1,331 days, and outside storage = 1,142 days). The Court calculates the penalty using the greatest of the four violations.

6

9. At the expiration of sixty (60) days, if items #2 and #5 have not been completed, Defendants are enjoined from using the property for any commercial purpose until such conditions have been met.

10. This Order shall be incorporated by reference on the Docket pursuant to M.R. Civ. P. 79(a).

DATE:   November 10, 2021

_____
Peter Goranites
Judge, Maine District Court

Entered on the Docket: 11/17/21

7