STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, ss.                          CIVIL ACTION
                                        DOCKET NO. CV-06-206

ALAN D. KNOWLTON,          )
                           )
        Plaintiff,         )
                           )
v.                         )
                           )              **ORDER**
                           )
G. STEVEN ROWE, et al.,    )
                           )
        Defendant.         )

FILED & ENTERED
SUPERIOR COURT
JUL 17 2007
PENOBSCOT COUNTY

This matter is before the court on a Rule 26(g) discovery dispute regarding whether the plaintiff may depose the defendants' attorney and obtain other documents and information regarding certain insurance complaint negotiations.

## BACKGROUND

Plaintiff Alan Knowlton ("Knowlton") is a former employee of Bankers Life and Casualty Company ("Bankers Life"). He was terminated pursuant to one of the terms of a consent agreement entered into between Bankers Life and the defendants in this matter, the Maine Attorney General's office and the Superintendent of the Bureau of Insurance (collectively referred to in this order as "the State"). The consent agreement reportedly represented the culmination of negotiations pertaining to consumer complaints received by the State against Bankers Life

1

between 2002 and 2005. The Bankers Life consent agreement with the State was executed on April 11, 2005.

Knowlton had reached an earlier consent agreement with the State when he was accused of misrepresenting the financial strength rating of Bankers Life in a recruiting effort. This consent agreement provided, among other things, that the State would forgo any other disciplinary action against Knowlton with respect to his misconduct. The Knowlton consent agreement with the State was executed on March 28, 2005. In fact, following the execution of the State/Bankers Life consent agreement, Knowlton was fired consistent with the terms of that agreement which directed that he be fired.

In his original complaint against the State, Knowlton brought suit under separate contract and tort claims for violation of his personal consent agreement with the State. At that time, he requested to depose the State's attorney, Assistant Attorney General Andrew Black ("Attorney Black"), regarding the negotiations that led into the consent agreement between the State and Bankers Life. In addition, he requested that Attorney Black provide any documents relating to such negotiations. The State objected on grounds of statutory confidentiality pursuant to 24 M.R.S.A. § 206(2). Justice Mead sustained the objection in

2

a March 7, 2007 order, stating: "The court is satisfied that the negotiation process is subject to statutory confidentiality. The court is further satisfied that the current configuration of the matter does not justify judicial abrogation of the confidentiality established by the statute." However, Justice Mead did state that the issue could be raised without prejudice should Knowlton's tort claims survive a motion for summary judgment on the procedural issues.

Following this order, however, Knowlton agreed to dismiss his tort claim, acknowledging that it was barred by the Maine Tort Claims Act. Subsequently, the court granted Knowlton's request to amend his complaint in order to incorporate several claims under 42 U.S.C. § 1983. In order to obtain evidence in support of his 1983 claims, Knowlton renewed his request for Attorney Black's deposition, which brings us to the discovery dispute now before the court.

## DISCUSSION

The defendants renew their argument that the negotiation process is subject to confidentiality provisions of Maine statutory law. Pursuant to the Maine Insurance Code, all Bureau records are subject to public inspection except for "records, correspondence and reports

of investigation in connection with actual or claimed violations of this Title or prosecution or disciplinary action for those violations," which are confidential. 24-A M.R.S.A. § 216(2). Nonetheless, "[a]ll records and documents of the bureau are subject to subpoena by a court of competent jurisdiction." *Id.* § 216(3). That suggests to the court that there are limits on the claim for confidentiality by the State.

The State first directs the court to Justice Mead's March 2007 order and argues that the court cannot now allow the deposition pursuant to the doctrine of the law of the case. This doctrine applies to "proceedings involving the same case." *Monopoly, Inc. v. Aldrich*, 683 A.2d 506, 510 (Me. 1996) (quoting *Grant v. City of Saco*, 436 A.2d 403, 405 (Me. 1981)). This is not the same "configuration" that was before Justice Mead and which was the subject of his order. As such, the court has authority to examine the discovery motion with regard to the current case posture.

Second, the State argues that there are "several flaws" in each of Knowlton's 1983 claims and, in this sense, "Knowlton's constitutional claims have no more potential viability than did his barred tort claim." (State's Mem. of Law at 3-4). Although the defendants question the validity of the 1983 claims, this dispute is

before the court solely on a discovery dispute and not as a motion to dismiss.

Having addressed these initial arguments, this court finds that the plaintiff should have the opportunity to develop his case. Although the 1983 claims are separate and distinct from the now dismissed tort claims, the State previously recognized with respect to the tort claims that "Mr. Knowlton is at least entitled to the opportunity to attempt to develop his case." (State's 2/23/2007 Mem. of Law at 6). Likewise, Knowlton is entitled the opportunity to develop his 1983 claims. Furthermore, section 216(2) is concerned with _public_ exposure to records and other information concerning investigations and negotiations pertaining to insurance violations. As the State points out, there is a risk that public exposure to the information requested by Knowlton would chill "candid exchange of information in Bureau investigations." (State's Mem. of Law at 5). In order to prevent such a chilling effect, the court can and does order, pursuant to its subpoena power under section 216(3), that Knowlton will be able to take the deposition of Attorney Black, however, in the interest of preventing inappropriate public exposure of the Bureau's 'records,' all records and transcripts from the deposition, including deposition exhibits, will remain

confidential and will be kept in the custody of each counsel who appear in this litigation for use exclusively in this litigation. Copies of the deposition transcript will not be provided to any third parties (including expert consultants for any party) without an order of the Court authorizing that disclosure, following a hearing, or by the mutual agreement in writing of all counsel who appear in this litigation. The court is prepared to revisit this issue following the completion of the deposition, at the request of any party, to further balance the interest of the Bureau to confidentiality as against Knowlton's interest in protecting his rights in this litigation.

## CONCLUSION

The entry is:

For the above stated reasons, the court can and does order, pursuant to its subpoena power under 24-A M.R.S.A. section 216(3), that Knowlton will be able to take the deposition of Attorney Black, however, in the interest of preventing inappropriate public exposure of the Bureau's 'records,' all records and transcripts from the deposition, including deposition exhibits, will remain confidential and will be kept in the custody of each counsel who appear in this litigation for use exclusively in this litigation.

Copies of the deposition transcript will not be provided to any third parties (including expert consultants for any party) without an order of the court authorizing that disclosure, following a hearing, or by the mutual agreement in writing of all counsel who appear in this litigation. The court is prepared to revisit this issue following the completion of the deposition, at the request of any party, to further balance the interest of the Bureau to confidentiality as against Knowlton's interest in protecting his rights in this litigation.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: July 16 , 2007

Kevin M. Cuddy
Justice, Superior Court

7

ALAN D KNOWLTON VS STEVEN ROWE, AS AAG OF STATE OF MAINE, ET AL
UTN:AOCSsr  -2006-0110339                    CASE #:BANSC-CV-2006-00206
------------------------------------------------------------------------

ALAN  D. KNOWLTON                                        PL
ATTY BALDACCI, JOSEPH M.   Tel# (207) 945-3333
ATTY ADDR:6 STATE ST, SUITE 605 PO BOX 1423 BANGOR ME 04402-1423
ATTY MEHNERT, ERIC  Tel# (207) 776-8378
ATTY ADDR:6 STATE STREET PO BOX 2668 BANGOR ME 04402


STEVEN ROWE AS ATTORNEY GENERAL,MAINE                    DEF
ATTY TAUB, CHRISTOPHER C.   Tel# (207) 626-8800
ATTY ADDR:111 SEWALL STREET 6 STATE HOUSE STATION AUGUSTA ME 04333-0006


ALESSANDRO  A. IUPPA SUP INS - NO LONGER SUP , SUB       DEF


MAIL ADDR:DEPT PROFESSIONAL & FINANCIAL  35 STATE HOUSE STATION AUGUSTA ME 04333


ERIC  A. CIOPPA SUP INS SUBSTITUTED                      DEF
ATTY TAUB, CHRISTOPHER C.   Tel# (207) 626-8800
ATTY ADDR:111 SEWALL STREET 6 STATE HOUSE STATION AUGUSTA ME 04333-0006


M=More, Space = Exit:M

Select the EXIT KEY for page selection line.

                                                              >

STATE OF MAINE                           SUPERIOR COURT
PENOBSCOT, ss.                           CIVIL ACTION
                                         DOCKET NO. CV-06-206

ALAN D. KNOWLTON,

      Plaintiff,

    v.                                    **ORDER**

G. STEVEN ROWE, ATTORNEY
GENERAL OF THE STATE OF MAINE,
and

ERIC A. CIOPPA, ACTING SUPER-
INTENDENT OF THE MAINE BUREAU
OF INSURANCE,



PENOBSCOT COUNTY

      Defendants.

    The plaintiff has moved to amend his complaint to add three defendants in their individual capacities, Andrew Black, Glenn Griswold, and Judith Shaw. The defendants have opposed this motion.

## BACKGROUND

    The plaintiff, Alan D. Knowlton, commenced this action by filing his original complaint with this Court on September 26, 2006. In his original complaint he sought damages from the defendants for breach of contract and intentional interference with a contractual right and also sought a declaratory judgment. On April 23, 2007 the plaintiff filed a motion to amend his complaint to remove his claim of intentional interference with a contractual right and to add three claims pursuant to 42 U.S.C. § 1983. The defendants did not oppose and the amendment was permitted.

    Discovery in this case was twice extended and finally closed on January 28, 2008. During discovery the plaintiff deposed all of the individuals he seeks to add as defendants

1

through his proposed amendment. He deposed Andrew Black on September 6, 2007. The depositions of Glenn Griswold and Judith Shaw took place on November 1, 2007.

On February 27, 2008, the defendants filed a motion for summary judgment. The defendants sought summary judgment on the plaintiff's claims brought under section 1983. The defendants argued that they could not be liable under section 1983 because they were not "persons" within the meaning of that section when sued in their official capacities as officers of the State. *See* 42 U.S.C. § 1983; *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Andrews v. Dep't of Envtl. Prot.*, 1998 ME 198, ¶ 10 n. 4, 716 A.2d 212, 217.

On April 4, 2008 the plaintiff filed his opposition to the defendants' motion for summary judgment and the motion to amend his complaint that is now before the Court. In his opposition to summary judgment, the plaintiff conceded that the defendants were not persons under section 1983 but relied upon the motion to amend his complaint, which is now before the Court, in order to oppose summary judgment. The defendants have opposed the plaintiff's motion to amend.

## DISCUSSION

Leave to amend pleadings "shall be freely given when justice so requires." M.R. Civ. P. 15(a).[1] "Whether to allow a pleading amendment rests with the court's sound discretion." *In re Petition of Sen*, 1999 ME 83, ¶ 10, 730 A.2d 680, 683. The discretion of the court is limited and the court may abuse such discretion if it denies an amendment that is necessary to prevent injustice. *See Bahre v. Liberty Group, Inc.*, 2000 ME 75, ¶ 7, 750 A.2d 558, 560.

---

[1] The plaintiff has characterized his motion as one to amend the pleadings. Insofar as it seeks to add defendants to the action it is a motion under M.R. Civ. P. 21. *See* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 21.2 at 380 (2d ed. 1970). The court's standard for review of these motions is the same. *See* 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 21.02(3) (3d ed. 2007).

The court must consider all circumstances surrounding a proposed amendment in deciding whether or not to grant leave to amend. Factors include whether the amendment would prejudice the opposing party, was brought in bad faith, would unduly delay the trial, or was not requested in a timely way. "An amendment should be offered promptly upon awareness of the need for it, and unreasonable delay may influence the court's discretion." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 15.4 at 304 (2d ed. 1970).

In this case the plaintiff brought his motion to amend his complaint over eighteen months after his initial complaint was filed, after discovery was complete, and after the defendants had filed a motion for summary judgment. The plaintiff argues that this amendment should be permitted because it was only during discovery that these three individuals admitted that they were involved in the decisions that are the subject of the complaint. However, the plaintiff waited six months after taking depositions from these individuals and waited until after discovery had closed to seek to amend his complaint. The court is within its discretion to deny a plaintiff's motion to amend the pleadings when it is filed long after the original complaint was filed, after the close of discovery, and after defendants have filed a motion for summary judgment. *McIntyre v. Nice*, 2001 ME 74, ¶ 10, 786 A.2d 620, 622.

The plaintiff in this case has not made a prompt motion to amend his complaint following the discovery of the facts upon which the amendment is based. Rather, the plaintiff is attempting to use his amendment as a tool to defeat the defendants' motion for summary judgment on the plaintiff's section 1983 claims.[2] "A motion for leave to amend

---

[2] In their motion for summary judgment the defendants argued that they are not "persons" for purposes of a claim under section 1983. The plaintiff concedes this in his response and asks the Court to deny summary judgment based upon the proposed amendment.

is not a vehicle to circumvent summary judgment." *Schlacter-Jones v. Gen. Tel.*, 936 F.2d 435, 443 (9th Cir. 1991). *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 175 F.R.D. 640, 645 (C.D. Cal. 1997). The plaintiff may not simply amend his complaint late in the litigation process in order counter meritorious arguments that have been raised by his adversaries in their motion for summary judgment.

This amendment would further delay this litigation that has been pending for over two years. Adding the aforementioned defendants would likely require additional discovery as the proposed individual defendants may wish to retain their own counsel and defend themselves. The plaintiff suggests to the Court that the State's attorneys would represent these individuals alongside the current defendants thereby minimizing delay; however, as the State has argued, there is potential that this will not occur. These three individuals may have conflicting interests in the litigation that require separate representation. *See* M. Bar R. 3.4(c)(2). The possibility of further delay in this already lengthy litigation weighs heavily against the plaintiff's proposed amendment.

The Court also notes that no injustice will result upon the denial of the plaintiff's motion. The statute of limitations for section 1983 claims is six years. 14 M.R.S. § 752 (2008); *Stickney v. City of Saco*, 2001 ME 69, ¶ 27, 770 A.2d 592, 603; *McKenney v. Greene Acres Manor*, 650 A.2d 699, 701 (Me. 1994). The conduct complained of occurred in 2005, leaving the plaintiff ample time to file a separate action against the proposed defendants if he wishes.

## CONCLUSION

Considering the plaintiff's delay in seeking leave to amend his complaint, the significant possibility of further delay in this litigation, and that no injustice will occur in

4

denying the plaintiff's motion, the Court denies the plaintiffs motion to amend his complaint.

The entry is:

1. The defendants' motion to amend the pleadings is **DENIED**.

2. This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: October 7, 2008

William R. Anderson
Justice, Superior Court

5

-----------------------------------------------------------------------

     SEQ TITLE            NAME                          DOB    ATTY
     001 PL       ALAN D KNOWLTON  BY JOSEPH BALDACCI ESQ   / /    T
     002 DEF    * STEVEN ROWE AS ATTORNEY GENERAL,MAINE     / /    T
     003 DEF      ALESSANDRO A IUPPA SUP INS - NO LONGER SUP / /   PRO
     004 DEF    * ERIC A CIOPPA SUP INS SUBSTITUTED         / /    T


         * BY CHRISTOPHER TAUB, AAG

STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss.                                    CIVIL ACTION
                                                  DOCKET NO. CV-06-206
                                                  ᴵ ᵎ ᴷ ᐟ

ALAN D. KNOWLTON,

        Plaintiff,

        v.                                        **ORDER**

G. STEVEN ROWE, ATTORNEY
GENERAL OF THE STATE OF MAINE,
and

ERIC A. CIOPPA, ACTING SUPER-
INTENDENT OF THE MAINE BUREAU
OF INSURANCE,

        Defendants.

> **FILED & ENTERED**
> **SUPERIOR COURT**
>
> OCT 1 5 2008
>
> **PENOBSCOT COUNTY**

The plaintiff seeks in his first amended complaint relief for breach of contract and violations of 42 U.S.C. § 1983 as well as a declaratory judgment. The defendants, the Secretary of State and Superintendent of the Maine Bureau of Insurance, have moved for summary judgment and the plaintiff has opposed.

## BACKGROUND

The plaintiff, Alan D. Knowlton, was previously employed by Bankers Life and Casualty Company (hereinafter "Bankers Life") as the branch manager of its Bangor office. In 2004, the Maine Bureau of Insurance received a complaint alleging that Knowlton had misrepresented the financial strength rating of Bankers Life, as rated by A.M. Best Company, during a recruitment meeting for new producers. The Bureau determined that Knowlton had in fact misrepresented the rating. Knowlton entered into consent agreement INS-04-2000 with the Bureau, which was signed by Knowlton on

1

March 28, 2005, and by the Bureau on April 5, 2005. The sanctions required by the consent agreement included *inter alia*, a $750 fine, a period of license probation, and potential license suspension if the probationary period was not satisfactorily completed. The consent agreement also provided that the sanctions contained therein would be the sole sanctions against Knowlton in resolution of the alleged misrepresentations of Bankers Life's financial strength rating.

> 25. In consideration of Mr. Knowlton's execution of and compliance with the terms of this Consent Agreement, the Superintendent and the Attorney General agree to forgo pursuing further disciplinary measures or other civil or administrative sanctions against Mr. Knowlton for the violations described in the Stipulations, other than those agreed to in this Consent Agreement....

(Supp. S.M.F. ¶ 18; Shaw Aff. Ex. B).

Meanwhile the Bureau was also negotiating with Bankers Life in order to resolve 70 complaints that had been received from consumers from January 2002 through April 2005. Bankers Life representatives signed a consent agreement on April 13, 2005, which was signed by the Bureau on April 14, 2005. This agreement constituted the settlement of multiple complaints that had been filed against Bankers Life.

> 10. This Agreement includes, but is not limited to, a settlement as to the company's responsibility under the following Bureau of Insurance administrative petitions, identified as follows:
>
> > INS-04-204, *IN RE*: Bankers Life and Casualty Company, Paul A. Landry and Jerold S. Smith;
> >
> > INS-04-228, *IN RE*: Bankers Life and Casualty Company and Gary R. Smith;
> >
> > INS-04-229, *IN RE*: Bankers Life and Casualty Company and Mary E. Matarazzo; and
> >
> > INS-04-2000, *IN RE*: Bankers Life and Casualty Company and Alan D. Knowlton.

(Shaw Aff. Ex. A).

2

The agreement detailed various sanctions against Bankers Life including a $400,000 civil penalty. It also required that Bankers Life relieve Knowlton and the branch manager of its South Portland office from their positions as branch managers.

> 53. Within 14 days of the effective date of this Agreement, Bankers Life shall relieve the managers of its South Portland and Bangor branch offices of their positions as branch managers. Bankers Life shall fill the vacant branch manager positions as expeditiously as possible, but with the priority of selecting individuals who are experienced enough to ensure that each branch operates in accordance with Maine law and the terms of this agreement.

(Supp. S.M.F. ¶ 47; Shaw Aff. Ex. A).

The consent agreement was fully executed on April 14, 2005 and Bankers Life contacted Knowlton that same day to advise him that he was being removed from his position.

## DISCUSSION

### A. Standard of Review

Summary judgment "shall be rendered...if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements [of material facts] show that there is no genuine issue as to any material fact." M.R. Civ. P. 56(c); *Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶ 18, 834 A.2d 947, 952-53. "A material fact is one that can affect the outcome of the case." *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825. "A genuine issue of material fact exists when the fact-finder must 'choose between competing versions of the truth.'" *Id.* (quoting *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040, 1044).

3

## B. Nature of the Consent Agreement

The State argues that the consent agreement that it entered with Knowlton was not a contract, precluding Knowlton from any recovery under contract law. An agreement between two parties supported by consideration is a contract enforceable at law. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 1, 71 (1981); 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 1.3 at 9-10 (rev. ed. 1993). Consideration is a "performance or return promise...sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." RESTATEMENT (SECOND) OF CONTRACTS § 71.

The consent agreement in this case is an agreement between Knowlton and the State. The State received Knowlton's consent to the sanctions listed in the agreement as consideration in exchange for its promise to pursue no further remedies or sanctions relating to his alleged misrepresentations of Bankers Life's financial strength rating. The fact that the agreement entered into by the parties is described as a consent agreement is of no consequence. Contracts are described by many names, including leases and sales. The use of the term "agreement" rather than "contract" does not remove this transaction from the law of contracts. The plaintiff has properly raised issues of fact regarding the existence of a contract; therefore, the Court cannot determine as a matter of law that a contract does not exist.

The very nature of consent agreements supports this conclusion. A consent agreement is essentially a settlement agreement in the context of adjudicatory proceedings before an administrative agency. It is well-established in Maine that "[s]ettlement agreements are analyzed as contracts." *Marie v. Renner*, 2008 ME 73, ¶ 7, 946 A.2d 418, 420. The Court sees no discernable difference between a settlement agreement in the context of civil litigation and a consent agreement in the context of

4

administrative adjudications; therefore, the consent agreement in this case should be analyzed as a contract. *See Employers Ins. Co. of Wausau v. Crouse-Cmty. Ctr.*, 489 F. Supp. 2d 176, 180 (N.D.N.Y. 2007), *reconsideration denied by* 2008 U.S. Dist. LEXIS 18454 (N.D.N.Y. 2008).

## C.  Sovereign Immunity

The State further argues that it cannot be held liable for damages under contract because it is protected by sovereign immunity. Sovereign immunity bars recovery against the State unless the State has consented to be sued by an act of the legislature. *Drake v. Smith*, 390 A.2d 541, 543 (Me. 1978). The Law Court has suggested such consent may be implied for breach of contract claims when the legislature enacts "a general statute allowing the State to enter into contracts." *Profit Recovery Group, USA v. Comm'r, Dep't of Admin. & Fin. Servs.*, 2005 ME 58, ¶ 28, 871 A.2d 1237, 1244. *See Drake*, 390 A.2d at 545.

In the present case, 10 M.R.S. § 8003(5)(B) authorizes the Bureau to enter into consent agreements in order to resolve complaints or investigations. The Court finds no occasion to determine whether or not an implied waiver of immunity exists in section 8003(5)(B) because that section explicitly waives immunity. "A consent agreement is enforceable by an action in Superior Court." 10 M.R.S. § 8003(5)(B) (2008). The State suggests that the statute's enforceability clause does not permit recovery for money damages under breach of contract; however, nothing in the statute or otherwise suggests this narrow interpretation. This waiver permits enforcement of a consent agreement in the same way that any other contract may be enforced, including remedies at law and equity.

The State has drawn this Court's attention to one unpublished case in which the Superior Court applied sovereign immunity in the context of consent agreements under section 8003(5)(B). In *State v. Weinschenk*, the Kennebec County Superior Court dismissed a counterclaim against the Maine Oil and Solid Fuel Board alleging breach of contract under a consent agreement entered into under section 8003(5)(B). *State v. Weinschenk*, AUGSC-CV-2000-00244 (Me. Super. Ct., Ken. Cty. Feb. 2, 2001) (Studstrup, J.), *rev'd on other grounds*, 2005 ME 28, 868 A.2d 200.[1] When *Weinschenk* went up on appeal, the Law Court chose not to address the Superior Court's application of sovereign immunity because it held that the counterclaim at issue could have been properly dismissed for failure to set forth the elements of a cause of action and failure to allege facts entitling the claimant to relief. *Weinschenk*, 2005 ME 28, ¶ 30, 868 A.2d at 209. The Law Court intentionally refrained from deciding whether sovereign immunity applied to claims arising from breaches of consent agreements. In light of this and the aforementioned reasons, this Court holds that section 8003(5)(B) explicitly waives sovereign immunity in the enforcement of consent agreements and that the Court may enforce the agreement through an award of damages.

## D. Breach of Contract

The State argues that even if the consent agreement is an enforceable contract, there was no breach. The agreement provided that the State would "agree to forego pursuing further disciplinary measures or other civil or administrative sanctions against

---

[1] The *Weinschenk* decision of the Kennebec County Superior Court stated *in toto* as follows.
>    After hearing on the State's Motion to Dismiss the Defendant's Ric Weinschenk Builder's, Inc.'s Counterclaim, the Order and entry is as follows: the State's Motion to Dismiss the Counterclaim is Granted. Pursuant to M.R. Civ. P. 13(d), sovereign immunity has not been waived.

*Weinschenk*, AUGSC-CV-2000-00244 (Me. Super. Ct., Ken. Cty. Feb. 2, 2001) (Studstrup, J.).

Mr. Knowlton for the violations described in the Stipulations." (Supp. S.M.F. ¶ 18; Shaw Aff. Ex. B).

### 1. "against Mr. Knowlton"

The State asserts that the sanctions contained in its consent agreement with Bankers Life requiring Knowlton's removal as manager of its Bangor office were not sanctions against Knowlton, but only against Bankers Life. The consent agreement with Knowlton only provided that it contained a plenary statement of the sanctions "against Mr. Knowlton." (Supp. S.M.F. ¶ 18; Shaw Aff. Ex. B). The State suggests that any effect upon Knowlton stemming from the consent agreement with Bankers Life was merely a collateral effect of that agreement and cannot be considered a sanction *against* Knowlton.

The word at issue in the interpretation of the consent agreement is "against." There is no question that requiring Knowlton's removal in the Bankers Life consent agreement was a sanction, but was it a sanction *against* Knowlton? This Court must apply principles of contract interpretation in resolving this question. When a contract is unambiguous, its interpretation is a matter of law to be decided by the court as a matter of law; however, if a contract or a term therein is ambiguous then its interpretation is a question of fact for the jury to resolve. *Villas By the Sea Owners Ass'n v. Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457, 461. "Whether or not a contractual term is ambiguous is a question of law" and must be decided by the court. *Id.*

The word "against" in the consent agreement with Knowlton is ambiguous. It is open to differing interpretations by the parties. On the one hand it could indicate that the State agreed to forego only direct actions against Knowlton for his alleged

7

misrepresentations of Bankers Life's financial strength rating. On the other hand, it could indicate that the State would not pursue any more sanctions that would adversely affect Knowlton, whether directly or indirectly through his employer. In light of this ambiguity, the interpretation of the consent agreement is a genuine issue of material fact that cannot be determined as a matter of law.

### 2. *"for the violations described in the Stipulations"*

The State has also argued that there is no breach because the consent agreement with Bankers Life requiring Knowlton's removal was not for the same violations as the consent agreement with Knowlton. The consent agreement with Knowlton was only a plenary statement of sanctions "for the violations described in the Stipulations." (Supp. S.M.F. ¶ 18; Shaw Aff. Ex. B). If the sanctions imposed under the Bankers Life consent agreement arose out of separate violation then there could be no breach. However, the consent agreement with Bankers Life explicitly includes the same violation sanctioned through the consent agreement with Knowlton. The consent agreement with Bankers Life has a broader scope in that it settles additional complaints, but it does include Knowlton's misrepresentations. The consent agreement with Bankers Life states that "[t]his Agreement includes...a settlement as to the company's responsibility under...INS-04-2000, *IN RE*: Bankers Life and Casualty Company and Alan D. Knowlton." (Shaw Aff. Ex. A).

Even though the consent agreement with Bankers Life is a broader settlement than the one with Knowlton, it still dealt in part with Knowlton's representations that were already sanctioned in his consent agreement. This leaves a genuine issue of material fact as to whether or not Knowlton's removal under the consent agreement with Bankers Life

8

was in fact based upon the same violations that were stipulated in the consent agreement with Knowlton. Therefore, summary judgment must be denied.

### E. Persons Under 42 U.S.C. § 1983

The defendants argue that Knowlton is not entitled to relief under section 1983 because they are not "persons" within the meaning of section 1983 when sued in their official capacities. 42 U.S.C. § 1983. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). A State is not a person within the meaning of section 1983. *Id.* at 66.

Knowlton concedes that neither of the defendants are persons within the meaning of section 1983. He instead relies upon a motion to amend his complaint in order to add additional defendants, State employees who were involved in the consent agreement negotiations upon which this action is based. This Court has denied Knowlton's motion to amend his complaint; therefore, there are no persons within the meaning of section 1983 listed as defendants in this case. *See Knowlton v. Rowe*, BANSC-CV-2006-00206 (Me. Super. Ct., Pen. Cty., Oct. 7, 2008) (Anderson, J.). There remain no issues of material fact regarding Knowlton's section 1983 claims and summary judgment in favor of the defendants is appropriate.

### F. Declaratory Judgment

Knowlton asks this Court to issue a declaratory judgment that the clause in the consent agreement between Bankers Life and the State requiring his removal (1)

9

constituted a breach of consent agreement between Knowlton and the State, and (2) is void as unconstitutional. Knowlton further requests that the Court require the State to excise the removal clause from the consent agreement. The State has argued that summary judgment is proper because such a declaratory judgment would serve no useful purpose and because the removal clause is constitutional. "[W]hether a declaratory judgment should be issued rests in the sound discretion of the trial court." *E. Fine Paper, Inc. v. Garriga Trading Co.*, 457 A.2d 1111, 1112 (Me. 1983).

Under the Declaratory Judgments Act, a party may seek a declaratory judgment as to the construction or validity of a contract. 14 M.R.S. § 5854 (2008). However, the court should refrain from issuing declaratory judgments where they would serve no useful purpose. *Waterville Indus. v. Fin. Auth. of Maine*, 2000 ME 138, ¶ 25, 758 A.2d 986, 993; *Dodge v. Town of Norridgewock*, 577 A.2d 346, 347 (Me. 1990). A declaratory judgment serves no useful purpose when it would only determine past conduct that is unlikely to reoccur. *See District Attorney v. City of Brewer*, 543 A.2d 837, 839 (Me. 1988). *See also* 22A AM. JUR. 2D *Declaratory Judgments* § 28 (2003) ("While it is the general rule that a controversy is not withdrawn from the operation of such laws merely because it involves disputed questions of fact, declaratory decree statutes are not designed for the purpose of establishing purely factual issues.").

The issue of whether or not the State breached the consent agreement with Knowlton by including a clause requiring his removal in the consent agreement with Bankers Life is an issue of past fact and there is no likelihood that such breach will recur because both Knowlton and his employer have already been fully sanctioned for Knowlton's misrepresentations. Therefore, a declaration that the insertion of the removal clause constituted a breach on the part of the State would serve no useful purpose. If a

10

breach actually occurred then such will be determined as an issue of fact and Knowlton will receive an appropriate remedy under his claim for breach of contract. A declaration that a breach occurred on top of such relief would have no effect whatsoever.

With regards to Knowlton's request that this Court declare void the provision requiring his removal, both parties have overlooked a basic threshold issue. Knowlton has asked this Court to declare void a provision in an agreement between Bankers Life and the State. Knowlton was not a party to that agreement nor was he a third-party beneficiary. A determination of the rights of the parties under an agreement between Bankers Life and the State would only be appropriate if Bankers Life were a party to this suit, which they are not. Even if this Court were to issue the declaration requested by Knowlton, it would not have any effect upon the rights and obligations of the parties to the agreement. 14 M.R.S. § 5963 (2008) ("no declaration shall prejudice the rights of persons not parties to the proceeding"). *See Harriman v. Harriman*, 1998 ME 108, ¶ 9, 710 A.2d 923, 925 (holding that a court cannot change the contract rights of creditors or individual debtors in allocating debt responsibilities between the parties in a divorce action).

Based upon these considerations to which there are no issues of material fact, the Court determines in its discretion as a matter of law that a declaratory judgment would serve no useful purpose and is not appropriate. Consequently, summary judgment is proper.

The entry is:

1.  The defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

11

2. The defendants' motion for summary judgment is **DENIED** as to count one of the plaintiff's first amended complaint, breach of contract.

3. The defendants' motion for summary judgment is **GRANTED** as to count two of the plaintiff's first amended complaint, violation of 42 U.S.C. § 1983, due process.

4. The defendants' motion for summary judgment is **GRANTED** as to count three of the plaintiff's first amended complaint, violation of 42 U.S.C. § 1983, double jeopardy.

5. The defendants' motion for summary judgment is **GRANTED** as to count four of the plaintiff's first amended complaint, violation of 42 U.S.C. § 1983, impairment of contract.

6. The defendants' motion for summary judgment is **GRANTED** as to count five of the plaintiff's first amended complaint, declaratory judgment.

7. This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: October *15*, 2008

William R. Anderson
Justice, Superior Court

12

ALAN D KNOWLTON VS STEVEN ROWE, AS AAG OF STATE OF MAINE, ET AL
                                          CASE #:BANSC-CV-2006-00206
--------------------------------------------------------------------------
SEL VD                              REPRESENTATION TYPE      DATE
01 0000007292 ATTORNEY:BALDACCI, JOSEPH M
ADDR:6 STATE ST, SUITE 605 PO BOX 1423 BANGOR ME 04402-1423
    F FOR:ALAN D KNOWLTON               PL          RTND    09/26/2006


02 0000003724 ATTORNEY:MEHNERT, ERIC
ADDR:6 STATE STREET SUITE 600 BANGOR ME 04402
    F FOR:ALAN D KNOWLTON               PL          RTND    06/27/2007


03 0000008416 ATTORNEY:TAUB, CHRISTOPHER C
ADDR:111 SEWALL STREET 6 STATE HOUSE STATION AUGUSTA ME 04333-0006
    F FOR:STEVEN ROWE AS ATTORNEY GENERAL,MAINE   DEF     RTND    10/27/2006
      FOR:  Eric A. Cioppa Acting Superintendent of Insurance for the State of Maine

STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-06-206

ALAN D. KNOWLTON,

Plaintiff,

v.

**ORDER**

G. STEVEN ROWE, ATTORNEY
GENERAL OF THE STATE OF MAINE,
and

ERIC A. CIOPPA, ACTING SUPER-
INTENDENT OF THE MAINE BUREAU
OF INSURANCE,

Defendants.

FILED & ENTERED
SUPERIOR COURT
DEC 19 2008
PENOBSCOT COUNTY

The defendants have filed a motion to reconsider the order of this Court granting in part and denying in part the defendants' motion for summary judgment. *Knowlton v. Rowe*, BANSC-CV-2006-00206 (Me. Super. Ct., Pen. Cty., Oct. 15, 2008). They request that this Court reconsider denying their motion for summary judgment as it related to the plaintiff's claim for breach of contract.

The issue raised in the present motion was raised by the defendants' in their motion for summary judgment and fully briefed.[1] The defendants again argue that requiring the removal of the plaintiff from his position as the branch manager of the Bangor office of Bankers Life in the consent agreement between the State and Bankers Life was not "for the violations described in the Stipulations" of the consent agreement

---

[1] This motion does not seek to "bring to the court's attention an error, omission or new material that could not previously have been presented." M.R. Civ. P. 7(b)(5). Motions for reconsideration should not be used as an avenue to reargue issues that have already been made or could easily have been made. *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714, 716. The *Maine Rules of Civil Procedure* mandate that such a motion "shall not be filed." M.R. Civ. P. 7(b)(5).

1

between the State and the plaintiff. The consent agreement entered with the plaintiff was under docket number INS-04-2000. The consent agreement entered with Bankers Life specifically stated in paragraph ten that it included a settlement as to the company's responsibility under INS-04-2000. Contrary to the defendant's arguments in the present motion, this creates a genuine issue of material fact as to whether the required removal of the plaintiff was for the same violations as the consent agreement he had previously entered.

The defendants argue from the record evidence that the particular provision requiring removal was not a sanction for the plaintiff's previously sanctioned misconduct; however, they neglect to realize that the Court does not act as a fact-finder in the context of a motion for summary judgment. If the defendants wish to ultimately prevail on such arguments they must save them for the jury. The facts are still in dispute; therefore, summary judgment is not appropriate on the plaintiff's claim for breach of contract and the defendants' motion for reconsideration is denied.

The entry is:

1. The defendants' motion for reconsideration is **DENIED**.

2. This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: December 16, 2008

William R. Anderson
Justice, Superior Court

2