STATE OF MAINE                                    SUPERIOR COURT

Lincoln, ss.

JACQUELINE CROCKER

        Plaintiff

        v.                                    Docket No. WISSC-RE-14-29

MARK MARINO

        Defendant

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Mark Marino's Motion for Summary Judgment is before the court, with Plaintiff Jacqueline Crocker's opposition, and Defendant's reply memorandum. The court elects to decide the motion without oral argument. See M.R. Civ. P. 7(b)(7).

*Background*

The following facts are undisputed, except where noted, for purposes of Defendant's Motion:

In June 2008, Plaintiff Jacqueline Crocker began renting, and moved into, the residence located at 5 Dodge Road, Dresden, Maine, then owned by Defendant Mark Marino. Plaintiff evidently rented the home with the idea of buying it and the lot on which it sits. Defendant had purchased the 5 Dodge Road property in the 1980's, and had resided in the home until he built a home elsewhere on Dodge Road. The structure had been built essentially as a single-story camp in the 1950's, according to Plaintiff, and the parties agree that it was significantly expanded to include a second story and additional spaces in 2004, with Mr. Marino and a local builder performing the work.

In September 2008, a few months after Plaintiff began renting the home, Defendant provided her with a property disclosure form in anticipation of her purchase

1

of the property. See Affidavit of Mark Marino ("Marino Aff.") Ex. D. The disclosure is silent regarding the size of the 5 Dodge Road lot and the condition of the structure.

Plaintiff contends that Defendant told her, before she purchased the 5 Dodge Road property, that the lot was just under two acres in area, and she contends it is actually under an acre—.82 acres to be exact. Defendant disputes her claim about his oral statement, and responds further by saying he advertised the property as being one acre, and pointing out that Plaintiff in her deposition acknowledged seeing the advertisement containing the one-acre reference.

On June 1, 2009, after she had been living in the home for about a year, Plaintiff entered into a written purchase and sale agreement with the Defendant and evidently closed on the purchase the same day. Marino Aff. Ex. A. The purchase and sale agreement defines the property sold in terms of the street address and also the book and page reference at the Lincoln County Registry of Deeds for the deed under which Defendant held title. Like the property disclosure form, the purchase and sale agreement is silent on the size of the lot. It also says nothing about the quality of the construction of the residence. It contains a merger clause indicating that "[a]ny representations, statements and agreements are not valid unless contained herein. This Agreement completely expresses the obligations of the parties." *Id.* ¶ 19. The purchase price for the property was $80,000, entirely financed by Defendant, who took a 40-year mortgage to secure payment. *See id.* ¶ 5.

Plaintiff does not dispute the authenticity of the property disclosure and purchase and sale agreement attached to the Defendant's affidavit, but claims she was rushed into signing them, did not read them, and did not realize that she could have had the property inspected before she purchased it.

2

She also claims that the Defendant told her that the residence was constructed to a high standard of quality. She asserts that, during the period 2011-13, she discovered that the property is very poorly constructed, specifically, with inadequate framing and an inadequate foundation. She asserts that the framing defects were concealed behind sheetrock and tongue-and-groove pine wallboard, and that the concealment was fraudulent. She asserts that the cost of remedying the defects is as high as $183,400, more than twice the purchase price for the property, and that the property has a value today of $44,000, little more than half the purchase price. Defendant's response to Plaintiff's allegations regarding the quality of construction emphasizes that Plaintiff acknowledged at her deposition that all of the statements she says Defendant made about the quality of the construction were made after she already had purchased the 5 Dodge Road property, and hence could not have been part of the purchase contract and also could not have been relied on by her in the purchase.

Lastly, Plaintiff contends that she received a $8,000 first-time homebuyer's tax credit, most of which she turned over to Defendant in the form of a check for $7,404. Her amended complaint asserts that the payment was intended to be a payment of principal. Defendant acknowledges receiving the $7,404 check, but contends that it was tendered as a payment of the first twelve payments due on the promissory note.

In September 2014, more than five years after purchasing the property, she began this action, initially *pro se*. She later filed an amended complaint, and retained an attorney. Her amended complaint alleges that Defendant is liable for breach of contract (Count I); fraudulent misrepresentation regarding the quality of construction (Count II); fraudulent misrepresentation regarding the $7,404 payment being applied to principal (Count III); breach of implied warranty of habitability (Count IV); violation of the

3

Maine Unfair Trade Practices Act (UTPA), 5 M.R.S. § 205 *et seq.* (Count V), and punitive damages (Count VI). Defendant's Motion asserts that he is entitled to judgment on all six counts.

*Standard of Review*

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the [fact finder] must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the moving party's motion for summary judgment is properly supported, the burden shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e). *See Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897In fact, in responding to a properly supported motion for summary judgment on a claim, "the [party asserting the claim] must establish a prima facie case for each element of [its] cause of action." *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346.

*Analysis*

This analysis addresses each count of the Amended Complaint to determine whether Defendant has demonstrated that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.

4

*Count I—Breach of Contract*

The Plaintiff alleges that the Defendant breached the purchase and sale contract in two respects—first, by misrepresenting the area of the lot to be almost two acres, whereas it is only an acre or less; second, by representing the construction of the residence to be of good quality, whereas it is of poor quality. Paragraph 15 of the Amended Complaint summarizes Plaintiff's breach of contract claim as follows:

> As part of the [purchase and sale] agreement with the Plaintiff, Defendant Mark Marino promised that the house being purchased was of a grade and quality that was marketable, and that the parcel of real property was a size totaling nearly two acres.

As to the breach regarding the acreage, Plaintiff's claim now appears based on what she was an oral representation by the Defendant during a walk-through of the lot that the lot was just under two acres in area. *See* Plaintiff's Deposition at 24. However, it was brought out at her deposition that, when she initiated this case *pro se*, she alleged that the misrepresentation was contained in one or more advertisements the Defendant had placed regarding the property. *See Plaintiff's Deposition* at 33. She acknowledged at her deposition that the Defendant's advertisements for the property described the property as being one acre in area. *See id.* at 33-34.

This contradiction—and whether the alleged oral representation formed part of the basis for the contract—might present an issue for the factfinder, except that, as the Defendant points out, that the purchase and sale agreement makes no reference to acreage, and it contains an integration clause. Plaintiff responds by arguing in her opposition that she should not be held to the terms of the purchase and sale agreement because she was unrepresented and because she felt rushed or pressured into signing it. However, she has not made a prima facie showing that the purchase and sale agreement is unenforceable, such that the integration clause should be disregarded.

5

The parties appear to have used a form purchase and sale agreement that was not drafted by either party, except for the handwritten insertions, which are not at issue. Plaintiff acknowledged at her deposition that she had a right to an inspection of the property that she failed to utilize. *See* Plaintiff's Deposition at 26. Moreover, if the agreement were indeed unenforceable against her, as her opposition contends, that might justify rescission, but her Amended Complaint seeks to enforce the agreement against the Defendant and to recover damages.

With regard to the breach claim based on alleged defects in the quality of construction of the residence, Plaintiff acknowledged at her deposition that all of the statements she asserts Defendant to have made about the quality of construction were made after she had already purchased the 5 Dodge Road property. *See id.* at 28-29. She was asked specifically at her deposition about when the Defendant had made statements about the good quality of construction, and she said twice that the statements were made after the purchase. *See id.* at 28:20-24, 29:12-15. Statements made after the purchase cannot have formed part of the purchase and sale contract.

For these reasons, the court concludes that Defendant is entitled to summary judgment on Count I of the Amended Complaint.

*Count II—Fraudulent Misrepresentation*

In Count II of her Amended Complaint, the Plaintiff contends that the Defendant fraudulently misrepresented the quality of the materials and construction used in the residence. Paragraph 24 describes the claim as follows:

> The act of Defendant's misrepresenting the quality of construction and concealing the inadequate construction behind sheetrock walls, the quality of the installation of the septic system, and the size of the parcel was an act to conceal true conditions from the Plaintiff and induce her to purchase the property. No defect was discovered by the Plaintiff until 2011.

6

In part, Count II suffers from the same problems as in Count I. The alleged misrepresentations admittedly occurred after the purchase, so Plaintiff could not have relied on them in making the purchase. In theory, even apart from the alleged misrepresentations, concealment of a known defect might give rise to a fraud claim, but here, the Plaintiff's only evidence of "concealment" is that the allegedly defective framing was hidden behind sheetrock and tongue-and-grove wallboard. The very purpose of sheetrock and wallboard is to "conceal" the studs, rafters, joists and other structural components of a building. Thus, fraudulent intent cannot be inferred from the mere fact that a builder chooses to install sheetrock or wallboard over the structural framing of a home.

Because Plaintiff's only evidence of fraudulent intent on Defendant's part is that he used sheetrock and wallboard in the ordinary way to cover the structural framing members of the residence that Plaintiff asserts are defective, she has failed to make a prima facie showing of fraud on the part of the Defendant, much less a showing that a factfinder could find sufficient to prove fraud by the required clear and convincing evidence standard, so Defendant is entitled to summary judgment on Count II of the Amended Complaint.

*Count III—Fraudulent Misrepresentation*

Count III of the Amended Complaint alleges that the Defendant fraudulently induced the Plaintiff to transfer to him the $8,000 she received at closing as the first-time homebuyer's tax credit. At her deposition, she acknowledged that she had actually received a check from the IRS for $8,042.19, Plaintiff's Deposition at 36; that she deposited the check into her own bank account, *id.* at 41, and that she then wrote Mr. Marino a check for $7,400 to cover her first year of mortgage payments. *Id.* at 36, 38.

She also acknowledged that Defendant had credited her payment toward the mortgage payments. *Id.* at 38-39. Defendant is entitled to summary judgment on Count III.

*Count IV (Breach Of Implied Warranty Of Habitability)*

The implied warranty of habitability is a principle of landlord-tenant law that is sometimes applied in the context of sales of new homes by the homebuilder. As a matter of law, Defendant did not make an implied warranty of habitability in connection with Plaintiff's purchase of a residence he had bought 20 years before the sale and expanded five years before the sale.

To the extent the Plaintiff's claim is based on her tenancy prior to purchasing the 5 Dodge Road property, she has not made a prima facie showing of liability. She and her family resided in the house for about a year before she decided to buy it—the only inference to be drawn is that the house was habitable. Defendant is entitled to summary judgment on Count IV as well.

*Count V (Violation of UTPA)*

The rulings on the prior counts may be deemed to presage the ruling on Plaintiff's UTPA claim, but actual fraud or deception is not required to prove a UTPA claim. The Law Court has noted that, for purposes of the UTPA, "An act or practice is deceptive if it is a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances. A material representation, omission, act or practice involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product. An act or practice may be deceptive, within the meaning of Maine's UTPA, regardless of a defendant's good faith or lack of intent to deceive." *State v. Weinschenk*, 2005 ME 28, ¶¶ 16-17, 868 A.2d 200, 206.

8

As noted above, the Plaintiff acknowledges that what she claims were the Defendant's statements about the quality of construction were made after she had already purchased the property. Thus, the only act that Plaintiff alleges against Defendant that could conceivably constitute a UTPA violation is his alleged oral statement, sometime before the purchase, that the 5 Dodge Road lot was almost two acres in area. But this statement was not made in connection with the sale of the house—the only statement regarding the area of the lot that the Defendant made was in the advertisements indicating that it was about an acre.

However, a separate shortcoming in the Plaintiff's UTPA claim is that she has not demonstrated that Defendant's sale of his home was a transaction within the UTPA. To be within the UTPA, a transaction has to involve "the conduct of trade or commerce," meaning that it has to occur in a "business context." *See Binette v. Dyer Library Ass'n*, 688 A.2d 898, 907 (Me. 1996). The UTPA can extend even to "an isolated transaction that takes place in a business context, as opposed to one done on a private, nonprofessional basis." *Id.*

The undisputed evidence is that the Defendant had built a home elsewhere on Dodge Road and accordingly first leased and then sold to Plaintiff the home he had lived in for about 20 years. Plaintiff claims that Defendant has been "in the business of fixing up houses," and Defendant in his affidavit denies that. In the court's view, the key points here is that the Defendant was selling a residence that he had lived in for 20 years, and that had been built in the 1950's and expanded five years before the sale. This was not the sale of a new home, or the sale of a home that had been renovated for purposes of resale. This was the sale of an older home by its owner. Therefore, even if Defendant at some point had been in the business of fixing up properties, there is no

9

evidence that this sale was in the context of that business. This was a private, nonprofessional sale, for purposes of *Binette*.

Both because the Plaintiff has not made a prima facie showing that the transaction was within the UTPA, and because she has not made such a showing that the Defendant committed an actionable act or practice in connection with her purchase, Defendant is entitled to summary judgment on Count V of the Amended Complaint.

*Count VI (Punitive Damages)*

Plaintiff's claim for punitive damages is viable only to the extent Defendant is liable for an intentional tort, upon proof of which punitive damages may be awarded. Because Defendant is entitled to summary judgment on the fraud claims, there is no basis for Plaintiff to be awarded punitive damages. Defendant is granted summary judgment on this count as well.

IT IS ORDERED;

1. Defendant's Motion for Summary Judgment is granted.

2. Judgment is hereby awarded to Defendant on all counts of the Amended Complaint.

3. Defendant is awarded his recoverable court costs as the prevailing party.

Pursuant to M. R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this order by reference in the docket.

Dated April 7, 2016

A. M. Horton
Justice, Superior Court

10